# Emoluments Clause and World Bank

An international organization in which the United States participates, such as the International Bank for Reconstruction and Development, is not a "foreign State" under the Emoluments Clause, U.S. Const. art. I, § 9, cl. 8.

May 24, 2001

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
SMITHSONIAN INSTITUTION

This responds to your request for our opinion whether the Emoluments Clause, U.S. Const. art. I, § 9, cl. 8, bars Smithsonian Institution employees from performing special projects under contracts for the International Bank for Reconstruction and Development ("World Bank"). As we have advised orally on several occasions over the past few years, we do not believe that an international organization such as the World Bank in which the United States participates is a "foreign State" under the Clause. *Id*. Therefore, the Emoluments Clause would not forbid this type of arrangement.

## I.

As we understand the arrangements in question, Smithsonian employees enter into contracts to perform special projects with the World Bank. The World Bank is an international organization of member states, which was created by the Articles of Agreement drawn up at a conference in Bretton Woods, New Hampshire in 1944. The United States joined the World Bank by accepting the Articles of Agreement in the Bretton Woods Agreements Act of 1945, 22 U.S.C. §§ 286-286nn (1994 & Supp. IV 1999). *See also* Articles of Agreement of the International Bank for Reconstruction and Development, Dec. 27, 1945, 60 Stat. 1440, 2 U.N.T.S. 134. The United States has undertaken, with the consent of Congress, a prominent role in the organization's management and decisionmaking. The United States governor appointed for the International Monetary Fund, another creation of the Bretton Woods Agreement, "shall also serve as a governor of the Bank," 22 U.S.C. § 286a(a); and the President appoints an executive director for the Bank, *id*. Moreover, by tradition, the World Bank's President is a national of the United States, which is the World Bank's largest shareholder. *See* World Bank Group at a Glance, http://www.worldbank.org (last visited Mar. 6, 2001).

The Emoluments Clause provides that no person holding an office of profit or trust under the United States "shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State." *Id*. The clause was designed to protect foreign ministers and other officers of the United States from undue influence and corruption by

113

foreign governments. *See, e.g.*, 2 *The Records of the Federal Convention of 1787* 389 (Max Farrand ed., rev. ed. 1966) (remarks of Mr. Pinkney); 3 *id.* at 327 (remarks of Governor Randolph); *see also Applicability of Emoluments Clause to Employment of Government Employees by Foreign Public Universities*, 18 Op. O.L.C. 13, 15 (1994).

Our Office has concluded that the prohibitions of the Emoluments Clause apply not only to constitutional officers—those officials who must be appointed pursuant to the Appointments Clause because they exercise "significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. 1, 126 & n.162 (1976) (per curiam)—but also to government employees, "lesser functionaries" who are subordinate to officers, *id. See Application of the Emoluments Clause of the Constitution and the Foreign Gifts and Decorations Act*, 6 Op. O.L.C. 156, 158 (1982) (*"Application of the Emoluments Clause"*) ("Even though the Framers may have had the example of high officials such as 'foreign Ministers' in mind when discussing the clause, . . . its policy would appear to be just as important as applied to subordinates. The problem of divided loyalties can arise at any level."). The Emoluments Clause thus would cover Smithsonian employees.[1]

We have also long found that contractual relationships such as those in question here give rise to "Emoluments" within the meaning of the Emoluments Clause. *See, e.g.*, Memorandum for S.A. Andretta, Administrative Assistant Attorney General, from J. Lee Rankin, Assistant Attorney General, Office of Legal Counsel, *Re: Payment of Compensation to Individual in Receipt of Compensation from a Foreign Government* at 8 (Oct. 4, 1954) ("[T]he term 'emolument' . . . was intended to cover compensation of any sort arising out of an employment relationship with a foreign state."); *see also* Letter for James A. Fitzgerald, Assistant Attorney General, United States Nuclear Regulatory Commission, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel (Mar. 24, 1986) (same). Absent the consent of Congress, the Emoluments Clause would, therefore, bar an employee of the Smithsonian from entering into such a contractual employment relationship with the World Bank if the World Bank is a "foreign State" under the Emoluments Clause.

In recent years, this Office in oral advice has consistently construed the terms "King, Prince, or foreign State" to exclude international and multinational

---

[1] This Office on previous occasions has given opinions to the Smithsonian Institution. *See, e.g.*, *Immunity of Smithsonian Institution from State Insurance Laws*, 21 Op. O.L.C. 81 (1997). In doing so, we have observed that "the unique, hybrid nature of the Smithsonian" raises questions about its legal or governmental status. *Id.* at 86 n.7. As we have noted before, the Smithsonian Institution itself, as well as its structure, organization, oversight, and management, are established by federal statute. *Id.* at 81. Both this Office and federal courts have "recognized the Smithsonian's status as an establishment, agency, or authority of the federal government, at least in certain contexts." *Id.* at 82. Furthermore, "[t]he Smithsonian receives a substantial portion of its funding from federal appropriations, and a majority of its employees are from the federal civil service." *Id.* at 81. Given this background, we assume, as you do, that Smithsonian personnel are covered by the Emoluments Clause.

organizations in which the United States participates. However, our few formal written opinions, going back to the 1950s, have not shown the same consistency.

In our first statements on the issue in the early 1950s, we advised that the Emoluments Clause would not prohibit a federal judge from serving on the International Law Commission under the auspices of the United Nations. *See* Memorandum for the Attorney General, from J. Lee Rankin, Assistant Attorney General, Office of Legal Counsel, *Re: Membership of Judge Parker on the International Law Commission* (Nov. 27, 1953) ("1953 Rankin Memorandum"); Memorandum for Herzel H.E. Plaine, from D.C. Stephenson, *Re: Article I, Section 9, Clause 8 of the Constitution—Its Meaning* (Nov. 13, 1953) ("1953 Stephenson Memorandum"). At that time, we noted that because international organizations such as the United Nations were unknown when the Constitution was adopted, the framers of the Constitution could not have had in mind service on such organizations when considering the Emoluments Clause. Giving weight to the purposes behind the Clause, we concluded that it would not apply to international organizations such as the United Nations. *See* 1953 Rankin Memorandum at 4-5; 1953 Stephenson Memorandum at 10. Later, although not expressly reversing these earlier opinions, we voiced some doubt about this conclusion, at least with regard to the United Nations, noting that "employment by the United Nations Secretariat does contain elements comparable to accepting an office from a foreign government," including "duties and responsibilities" owed to the organization comparable to that owed by an officer or employee of a government. *See* Memorandum for the Attorney General, from W. Wilson White, Assistant Attorney General, Office of Legal Counsel, *Re: Appointments to Civil Rights Commission* at 17 (Oct. 15, 1957) ("Accordingly, there is some basis for regarding United Nations employment as coming within the spirit if not the letter of the prohibition of Article I, Section 9, Clause 8 of the Constitution."); *cf. Applicability of Emoluments Clause to Proposed Service of Government Employee on Commission of International Historians*, 11 Op. O.L.C. 89, 90 & n.4 (1987) (suggesting that "concerns expressed by the Framers in the Emoluments Clause would still be applicable" to government employee's proposed service on international commission even if commission were established by international body, and noting inclusion of "any international or multinational organization" in definition of "foreign government" in Foreign Gifts Act; nevertheless, in case at issue, commission was established and funded by Austrian government).

## II.

The conclusion that the World Bank is not a "foreign State" under the Emoluments Clause follows, first, from the language of the Clause. It would hardly be a natural use of the words to say that the United States is a member of a "foreign

State." *See* 22 U.S.C. § 286.[2] The World Bank has neither a defined territory nor a permanent population under its control.

Because international organizations such as the World Bank were unknown when the Constitution was adopted, and because the framers of the Constitution thus did not contemplate service on such organizations when considering the Emoluments Clause, we have in the past looked to the purposes of the Clause in order to determine whether such an international organization is a "foreign State." On that score, we believe that our first examinations of the question in the early 1950s were correct. *See* 1953 Rankin Memorandum; 1953 Stephenson Memorandum. Although the interests of the organization and the United States are not identical, the United States has determined that the organization plays an important role in carrying out our foreign policy. The United States accordingly participates in the governance of the organization and undertakes a leadership role in its decisionmaking. Because of the role played by the United States in the World Bank as approved by Congress, employment of government employees by the organization would not directly raise the concerns about divided loyalty that the Emoluments Clause was designed to address.

To be sure, the Foreign Gifts and Decorations Act ("Foreign Gifts Act"), which generally prohibits employees from requesting or otherwise encouraging the tender of a gift or decoration given by a foreign government or from accepting or retaining such a gift of more than minimal value, defines "foreign government" to include international organizations. *See* 5 U.S.C. § 7342(a)(2)(B) (1994). Although the Foreign Gifts Act only covers gifts and decorations and does not apply to payment for services, *see, e.g.*, *Application of the Emoluments Clause*, 6 O.L.C. at 157 ("It seems clear that this Act only addresses itself to gratuities, rather than compensation for services actually performed . . . ."), the Foreign Gifts Act arguably is relevant here if it reflects Congress's understanding about the scope of the term "foreign State" in the Emoluments Clause. It is far from clear, however, that the definition of "foreign government" was intended to reflect Congress's understanding of the *constitutional* definition of "foreign State." The Foreign Gifts Act was originally enacted in 1966; international organizations were added to the definition of "foreign government" over a decade later in the 1977 amendments, *see* Foreign Relations Authorization Act, Fiscal Year 1978, Pub. L. No. 95-105, 91 Stat. 844, 863 (1977). The legislative history contains no indication that the addition was intended to correct a perceived gap between the existing

---

[2] Furthermore, although not dispositive, the definition of "state" under international law is instructive:

> Under international law, a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other such entities.

Restatement (Third) of Foreign Relations Law of the United States § 201 (1987).

coverage of the Foreign Gifts Act and the scope of the Emoluments Clause. *See, e.g.*, *Report on Foreign Relations Authorization Act, Fiscal Year 1978*, S. Rep. No. 95-194 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1625; *Report on Foreign Relations Authorization Act, Fiscal Year 1978*, H.R. Rep. No. 95-537, at 40 (1977) (Conf. Rep.), *reprinted in* 1977 U.S.C.C.A.N. 1670. In the absence of any evidence that constitutional concerns motivated this change, it seems likely that the expansion of the scope of the Foreign Gifts Act to reach international organizations was motivated by policy concerns as opposed to constitutional ones.[3]

We conclude that the World Bank is not a "foreign State" for purposes of the Emoluments Clause. The Clause therefore would not prohibit a Smithsonian employee from performing a special project under contract for the World Bank.

DANIEL L. KOFFSKY
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[3] At any rate, even if Congress had interpreted the constitutional phrase, we would not view that construction as necessarily controlling.